UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                               )
ALMA T. AUGUSTUS,              )
                               )
          Plaintiff,           )
                               )
          v.                   )   Civil Action No. 02-2545 (RWR)
                               )
JOHN MCHUGH,                   )
Secretary of the Army,         )
                               )
          Defendant.           )
_____)

### MEMORANDUM OPINION AND ORDER

        Pro se plaintiff Alma Augustus brought this action against

the Secretary[1] of the United States Army alleging violations of

the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et

seq., the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

and the Privacy Act, 5 U.S.C. § 552a.[2]  The parties have each

moved for summary judgment under Federal Rule of Civil Procedure

56.  Because the Secretary failed to comply with the procedures

prescribed in the Army's regulations when responding to

complaints Augustus filed, judgment will be entered for her on

her APA claim.  Because Augustus either has not factually

substantiated her Privacy Act claim or has not presented facts

revealing a genuine dispute over the Secretary's evidence

disproving her Privacy Act claim, summary judgment will be

_____

        [1]  John McHugh is substituted for Francis J. Harvey under
Federal Rule of Civil Procedure 25(d).

        [2]  Several other claims have been dismissed.

entered for the Secretary as to that claim.  However, because neither party has demonstrated entitlement to summary judgment as to Augustus's FOIA claim, both parties' motions will be denied without prejudice as to that claim.

BACKGROUND

The background of this case is discussed fully in an earlier Memorandum Opinion and Order issued in this case.  (See Docket #34, Sept. 29, 2004 Mem. Op. and Order ("Mem. Op.").)  In short, Augustus, an African-American woman, was a Lieutenant Colonel in the United States Army National Guard Bureau ("NGB") assigned to active duty as an Automation Officer at the Army National Guard Readiness Center in Arlington, Virginia.  (Am. Compl. at 1; see also Mem. Op. at 3.)  She claims that she was unlawfully denied a promotion and suffered from other unlawful forms of discrimination and retaliation, including not being considered for the Army's scholarship awards, after she voiced concerns about the NGB's alleged discriminatory personnel policies and procedures.  (Am. Compl. at 2-3; see also Pl.'s Mem. of P. & A. in Supp. of Pl.'s Opp'n to Def.'s Summ. J. and Cross Mot. for Summ. J. ("Pl.'s Mem.") at 15.)  Although Augustus took steps through informal channels to specify her concerns about NGB's discriminatory practices, she was not promoted and the NGB failed to address her concerns.  (Mem. Op. at 5.)  She filed a formal

equal opportunity ("EO") complaint with the NGB.  (Am. Compl. Ex. 3.)

Augustus asserts that the NGB's discriminatory motives underlying its failure to promote her were memorialized in a report of investigation ("ROI") prepared by Major General Peter Gravett in March 2001.  (Id. at 5 ¶ 7.)  She claims that the ROI "substantiated [her] unlawful gender and race discrimination" claims and recommended that she be promoted retroactively to the rank of Colonel.  (Id.)  Augustus claims further that Lieutenant General Roger Schultz and Major General James T. Jackson approved a separate ROI and deemed Gravett's ROI procedurally and substantively flawed and disregarded its recommendations.  (Mem. Op. at 8.)

On account of the perceived discrimination, Augustus filed three Article 138 complaints[3] with the NGB, requesting that it investigate violations of her privacy that allegedly occurred when the NGB's Inspector General's Office ("IG") revealed to Schultz both the discrimination allegations it received confidentially from Augustus and her identity, investigate a threatened reprisal for formally lodging complaints, and investigate allegations that Schultz threatened to take adverse

---

[3] Article 138 Complaints, formal complaints lodged under military regulations, were filed against Schultz, a Lieutenant Colonel Mitchell, and the NGB Inspector General's Office.  (Mem. Op. at 39.)

- 4 -

action against her.  (Id. at 9-10.)  Augustus also asserts that
her Privacy Act rights were violated when, among other things,
the NGB questioned her -- without providing her with a copy of a
Privacy Act statement -- about the NGB's suspicion that she
violated the Privacy Act herself.  (Id. at 12.)  The NGB returned
the complaints to her, claiming they were deficient for failure
to meet Army regulations.

     Augustus filed an eleven-count amended complaint in this
court alleging that the United States Army engaged in sex-based
and race-based discrimination and took other actions that
violated her rights under the Constitution, federal statutes, and
internal Army regulations and operating procedures.  The
Secretary filed a motion to dismiss the amended complaint under
Rule 12(b)(1) for lack of subject matter jurisdiction and under
Rule 12(b)(6) for failure to state a claim for which relief can
be granted.  The memorandum opinion addressing the defendant's
motion to dismiss grouped Augustus's various allegations into
eight claims: (1) discriminatory non-promotion (Counts 1, 5, 7,
9, 11); (2) erroneous records (counts 1, 6, 8); (3) failure to
investigate Article 138 complaints (Counts 1, 11); (4) procedural
inadequacies in investigating her EO complaint (Counts 1, 11);
(5) a general atmosphere of discrimination in the Army (Counts 1,
3, 5, 7, 9, 11); (6) violation of FOIA (Count 10); (7) violation
of the Privacy Act (Count 6); and (8) retaliation under the

- 5 -

Military Whistleblower Protection Act ("MWPA") (Counts 1, 2, 5,
8, 11).  (Mem. Op. at 15.)   The Secretary's motion to dismiss was
granted in part and denied in part, and most, but not all, of
Augustus's claims were dismissed for want of subject matter
jurisdiction.  The Secretary's motion was denied with respect to
Augustus's (1) Article 138 claims under the APA; (2) FOIA claim
seeking an unredacted copy of Gravett's ROI[4]; and (3) Privacy Act
claim for damages, alleging that the defendant invaded her
privacy by exceeding the Privacy Act's limitations on collecting
information from third parties, failing to publish a record
keeping system, and failing to safeguard her private information.
The parties have cross-moved for summary judgment as to these
remaining claims.

<u>DISCUSSION</u>

Rule 56(c) provides that summary judgment may be granted "if
the pleadings, the discovery and disclosure materials on file,
and any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  A dispute about a

---

[4] Although the memorandum opinion assessed this claim under
only the FOIA, Augustus's cross-motion for summary judgment
argues for a copy of the ROI under the Privacy Act as well.
(Pl.'s Mem. of P. & A. in Supp. of Pl.'s Opp'n to Def.'s Summ. J.
and Cross Mot. for Summ. J. ("Pl.'s Mem.") at 7.)  This claim in
the amended complaint was captioned as a Freedom of Information
claim, but the text did mention the Privacy Act.  (<u>See</u> Am. Compl.
at 21.)  This claim, therefore, will be treated as a claim
regarding the ROI under both FOIA and the Privacy Act.

material fact is "genuine . . . if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)
(internal quotation marks omitted).  Facts in dispute are
material if they are capable of affecting the outcome of the suit
under governing substantive law.  Id.  In considering a motion
for summary judgment, a court must view all evidence and
inferences to be drawn from the underlying facts "in the light
most favorable to the party opposing the motion."  Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In opposing a motion for summary judgment "'an adverse party
may not rest upon the mere allegations or denials of the adverse
party's pleading[.]'"  Heller v. Fortis Benefits Ins. Co., 142
F.3d 487, 492 (D.C. Cir. 1998) (quoting Fed. R. Civ. P. 56(e)
(1987)).  Rather, "'the adverse party's response, by affidavits
or as otherwise provided in this rule, must set forth specific
facts showing that there is a genuine issue for trial.  If the
adverse party does not so respond, summary judgment, if
appropriate, shall be entered against the adverse party.'"  Id.
(quoting Fed. R. Civ. P. 56(e) (1987)).

I.   ARTICLE 138 COMPLAINTS

Augustus alleges that the Army arbitrarily and capriciously
failed to follow its own regulations when processing her Article
138 complaints against Schultz, Lieutenant Colonel Mitchell, and

the IG, in violation of the APA.  An agency's alleged failure to follow its own regulations is reviewable under the APA.  See Webster v. Doe, 486 U.S. 592, 602 n.7 (1988).  Under the APA, a reviewing court must "hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  5 U.S.C. § 706.  "The APA [also] provides that, in reviewing agency action, the court 'shall' take account of 'the rule of prejudicial error,' 5 U.S.C. § 706, that is, whether the error caused prejudice."  Nevada v. Dep't of Energy, 457 F.3d 78, 90 (D.C. Cir. 2006).  "If the agency's mistake did not affect the outcome, . . . it would be senseless to vacate and remand for reconsideration."  PDK Labs. Inc., v. U.S. Drug Enforcement Auth., 362 F.3d 786, 799 (D.C. Cir. 2004).

An Article 138 complaint allows

> [a]ny member of the armed forces who believes [her]self
> wronged by [her] commanding officer, and who, upon due
> application to that commanding officer, is refused
> redress, [to] complain to any superior commissioned
> officer, who shall forward the complaint to the officer
> exercising general court-martial jurisdiction over the
> officer against whom it is made.

10 U.S.C. § 938.  Only certain wrongs may be righted through the Article 138 complaint process.  If "other, more specific channels and procedures . . . ensure the soldier has an adequate opportunity to be heard[,] . . . [then] [t]hose specific procedures" should be used.  Id. ¶ 20-5(a).  "Article 138

- 8 -

procedures should neither substitute for nor duplicate them."
Id.[5]

Army Regulation 27-10[6] sets forth the specific procedures
required to file an Article 138 complaint.  These require the
soldier filing the complaint first to attempt informal
communication between herself and her commanding officer, Army
Reg. 27-10 ¶ 20-3, and then to file a request for redress, id.
¶ 20-6, before finally filing a formal Article 138 complaint.
Id. ¶ 20-7.  An Article 138 complaint must contain the identity
of the offending commanding officer.  Id. ¶ 19-7(a)(5).  A
complaint may be rejected if it "does not substantially meet the
requirements of Article 138 . . . [and] no determination as to
the merits of the complaint is required.  Unless the deficiency
is waived . . . , such a complaint will be returned to the
complainant with a written explanation of the deficiency and, if
correctable, how it may be corrected."  Id. ¶ 20-10(a)(1).

Augustus claims that the Army failed to comply with ¶ 20-
10's requirement that it provide her a written explanation of the

_____

[5] Inappropriate matters for Article 138 resolution include
appeals from evaluation reports and the placement of adverse
information in a personnel file.  Army Reg. 27-10 ¶ 20-5(b)(7)-
(8).

[6] Cites to Army Regulations discussed in this portion of the
Memorandum Opinion concerning Augustus's Article 138 complaints
cite to the then-pending Army Regulations.  See Army Reg. 27-10
(1999); id. 20-10 (1994).  Cites elsewhere are to the current
versions of the Army Regulations.

- 9 -

deficiencies in her Article 138 complaints, and that this failure
caused her irreparable harm.  (Pl.'s Mem. at 6-7, 10.)  The Army
contends that Augustus's Article 138 complaints were properly
processed and determined to be fatally deficient, and that
despite the fatal deficiencies in her complaints, the Army
nonetheless took steps through appropriate administrative
channels to address the substance of her complaints.  (Def.'s
Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s
Mem.") at 6-14; see also A.R. filed on March 5, 2009 ("First
A.R."), Tab B at 7-8.[7])

     Augustus's Article 138 complaint against Schultz alleges
that Schultz initiated a "[p]rivacy issues investigation against
[her in] retaliation, reprisal, and retaliatory harassment for
[her] engagement in 'Protected Communications' with the [IG] and
an EEO investigation . . . to stop unlawful discrimination
against [her]."  (First A.R., Tab B at 10; A.R. filed on Nov. 4,
2010 ("Second A.R.") at 6.)  The Secretary's brief explains that
the Army found Augustus's Article 138 complaint against Schultz
to be deficient because Schultz was not Augustus's commanding

---

     [7] The First A.R. contains documents pertaining to Augustus's
APA, FOIA, and Privacy Act claims.  By contrast, the November 4,
2010 administrative record ("Second A.R.") includes only those
documents on which Jackson relied to determine that Augustus's
Article 138 complaints were deficient under Army Reg. 27-10 ¶ 20-
10.

- 10 -

officer.[8]  (Def.'s Mem. at 9 n.2.)  Under 10 U.S.C. § 938, the
subject of a soldier's Article 138 complaint must be her
commanding officer.  See 10 U.S.C. § 938.  Though certain
deficiencies in Article 138 complaints may be waived, this
particular deficiency cannot be waived.  See Army Reg. 27-10
¶ 20-10(b)(3)(b).  (See also First A.R., Tab B at 84; Second A.R.
at 21.)  Augustus's Article 138 complaint against Mitchell
alleges that (1) by reporting that Augustus may have obtained
personnel documents in violation of the Privacy Act, Mitchell
violated Augustus's confidentiality; (2) she was "being
threatened with reprisal because of the . . . disclosure of [her]
identity and the nature of the information" disclosed; and (3)
she was "being threatened with unfavorable personnel action and
the withholding of favorable personnel actions regarding [her]
EEO complaint[.]"  (First A.R., Tab B at 13; Second A.R. at 8.)
The Secretary's brief explains that the Army found that
Augustus's complaint against Mitchell was fatally deficient
because Mitchell was not Augustus's commanding officer, a

---

[8] The Secretary's brief also explains that Augustus's
Article 138 complaint against Schultz was deficient because
Augustus's alleged injuries were subject to review under
alternative administrative procedures, including reprisal for
protected communications with the IG.  (Def.'s Mem. at 9.)  Any
reprisal for communicating with the IG is subject to review under
10 U.S.C. § 1034.  Army Regulation 27-10 explicitly informs that
reprisal allegations should be reported under 10 U.S.C. § 1034,
rather than brought as an Article 138 complaint.  Army Reg. 27-10
¶ 20-5(b)(3).

- 11 -

deficiency like the one in her complaint against Schultz.[9]
(Def.'s Mem. at 11.)  See 10 U.S.C. § 938.  Finally, Augustus's
third Article 138 complaint was filed against the Inspector
General's Office seeking "redress of wrongs committed against
[her] by the NGB-IG office[.]"  (First A.R., Tab B at 12; Second
A.R. at 9.)  The Secretary's brief explains that this complaint
was deficient because it impermissibly named as a respondent an
office rather than a commanding officer, and Augustus had not
requested redress before filing the complaint.  (Def.'s Mem. at
12-13.)[10]

On April 17, 2001, Jackson wrote a memorandum to Augustus
returning her Article 138 complaints to her with the following
explanation: "Your complaints, pursuant to Article 138, UCMJ, and
[Army Regulation] 27-10, Chapter 20, are deficient.  Accordingly,
they are returned without action."  (First A.R., Tab C at 826-28;
Second A.R. at 2; see also id. at 21 (exempting reviewing
officers from making a determination on a deficient complaint).)
The memorandum also announced that because the complaints

---

[9] The Secretary's brief also explains that Augustus's
complaint was deficient because she reportedly failed to submit a
request for redress before filing the complaint.  (Def.'s Mem. at
11.)

[10] Augustus states in her statement of material facts that
naming the "NGB IG" was intended to refer to Cronin Byrd, the
Inspector General.  (Pl.'s Stmt. of Material Facts [Dkt. Entry
#94] at 6.)  The complaint nevertheless failed to identify Byrd
or anyone else as her commanding officer.

- 12 -

"include allegations of misconduct by a General Officer and various Inspectors General," copies of the complaints would be forwarded to the Department of the Army Inspector General for appropriate investigation and action under Army Reg. 20-1 ¶ 7-3(h), (i).  (Second A.R. at 2.)  Jackson also attached as an enclosure to the memorandum an information paper that the Secretary claims "outlin[es] the proper procedures for filing an Article 138 complaint."[11]  (Def.'s Mot. for Summ. J. at 10; <u>see also</u> First A.R., Tab C at 826, Second A.R. at 4.)[12]

Army Regulation 27-10 ¶ 20-10(a)(1) requires the Army to

_____

[11] The Secretary's description is unduly generous.  The "information paper" is a half-page advisory to *commanders* about resolving Article 138 complaints.  While it alerts commanders that soldiers must follow the procedures outlined in AR 27-10, Chapter 20, in order to file an Article 138 complaint, the Chapter 20 procedures the information paper excerpts are seven pages long (Second A.R., Tab C at 19-25), and are not reproduced in the information paper that Augustus received.

[12] The Secretary deemed Jackson's letter to be final agency action within the meaning of the APA, 5 U.S.C. § 704.  (<u>See</u> First A.R., Ex. 1 at 4.)  However, the parties' briefs do not analyze this issue.  In determining whether an agency action is final, courts consider if "its impact is 'direct and immediate,' <u>Franklin v. Massachusetts</u>, 505 U.S. 788, 796-97 (1992); whether the action 'mark[s] the consummation of the agency's decisionmaking process,' <u>Bennett v. Spear</u>, 520 U.S. 154, 178 (1997); and whether the action is one by which 'rights or obligations have been determined, or from which legal consequences will flow.'"  <u>Colo. Farm Bureau Fed'n v. U.S. Forest Serv.</u>, 220 F.3d 1171, 1173-1174 (10th Cir. 2000) (internal citation omitted).  Because "[t]he requirement of final agency action is <u>not</u> jurisdictional[,]" <u>Trudeau v. Fed. Trade Comm'n</u>, 456 F.3d 178, 184 (D.C. Cir. 2006) (emphasis in original) (internal quotation marks and citation omitted), and the Secretary has not raised this defense, it is waived.  <u>See, e.g.</u>, <u>Hinton v. Corr. Corp. of Am.</u>, 623 F. Supp. 2d 61, 63 n.2 (D.D.C. 2009).

- 13 -

provide a complainant a written explanation of any deficiency in
any Article 138 complaint that is rejected for failure to
substantially meet the requirements of Article 138, and a written
explanation of how the deficiency can be corrected if it is
correctable.  (Second A.R. at 21.)  What seems obvious is that
the language of the regulation seeks to avoid an explanation that
simply says "your complaint is deficient.  Go read the rules and
figure out why."  Jackson's letter did just that.  The
Secretary's brief, on the other hand, provided fairly fulsome
explanations for the deficiencies found in the three Article 138
complaints.  It provided, though, no justification for why those
detailed explanations were not provided in Jackson's letter.  Nor
did the Secretary's brief cite any authority supporting the terse
Jackson language as adequate to satisfy the required level of
explanation.  The undisputed material facts reveal that the
Army's letter to Augustus was not in accordance with its own
regulations.  Accordingly, judgment will be entered for Augustus
on her Article 138 claims brought under the APA.  However, since
the Secretary's brief provides her with the explanations to which
she was originally entitled for why her complaints were
deficient, and the original failure to supply the explanations
did not affect the decision to reject the complaints as
deficient, no further relief is warranted.

II.  FOIA/PRIVACY ACT CLAIMS SEEKING GRAVETT'S ROI

     Augustus seeks, under FOIA and the Privacy Act, an

- 14 -

unredacted copy of Gravett's ROI that was drafted for the purpose
of investigating her discrimination claims.  She asserts that the
ROI the Army produced contained "tens of thousands of
unlawful[ly] redacted items" and that because a "[Privacy
Act]/FOIA request gives [her] more substantial rights than just a
FOIA request[,]" she is entitled to an unredacted copy of the
ROI.  (Pl.'s Mem. at 7-8, 10-13.)  The defendant opposes
Augustus's request for an unredacted copy of the ROI, stating
that the Army lawfully redacted certain information "under FOIA
exemptions applicable to release of *agency records*[.]"  (Def.'s
Suppl. Response ("Def.'s Suppl.") at 2 (emphasis in original).)[13]

     A.   FOIA

     Under FOIA, "'a federal agency must disclose agency records
unless they may be withheld pursuant to one of the nine
enumerated exemptions listed in § 552(b).'"  Clemmons v. U.S.
Army Crime Records Ctr., Civil Action No. 05-02353 (RCL), 2007 WL
1020827, at *5 (D.D.C. Mar. 30, 2007) (quoting U.S. Dep't of
Justice v. Julian, 486 U.S. 1, 8 (1988)).  Because, however, FOIA
"'calls for broad disclosure of Government records[,]' . . .
courts have construed the exemptions to FOIA very narrowly to
allow for a greater dissemination of information."  Id. (quoting
CIA v. Sims, 471 U.S. 159, 167 (1985)).

---

     [13] The Secretary initially withheld the ROI on the basis of
the deliberative process privilege under FOIA, but later withdrew
the privilege as a basis for withholding the ROI.  (Def.'s Suppl.
Response ("Def.'s Suppl.") at 7 n.4.)

- 15 -

The Secretary asserts that the "government has properly withheld the redacted information in order to protect the privacy of the individuals with whom Plaintiff had discussed her allegations and about whom Plaintiff has made allegations" and that Augustus has neither submitted waivers from these individuals nor "offered a public interest that would overcome the privacy interests at stake." (Def.'s Suppl. at 17.)  The defendant invokes FOIA exemptions 6 and 7(C) (id. at 6),[14] which exempt the government from having to disclose (1) "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;" and (2) "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6), (7)(C).

In redacting the information from Gravett's ROI, the Army grouped the redacted information into the following categories: names and identifying information of witnesses interviewed during the course of the ROI investigation; personal information of the

_____

[14] The Secretary also invokes exemption 5 of FOIA (see Def.'s Suppl. Response at 6), but in a declaration offered in support of its response to Augustus's motion to compel production of a Vaughn index, an attorney in the Department of the Army, Office of the General Counsel, stated that he did not "identif[y] any information that could be withheld under FOIA Exemption 5[.]" Because the defendant's declaration did not rely on FOIA Exemption 5, Exemption 5 will not be discussed.

- 16 -

investigation officer and panel members; names and identifying
information of individuals against whom allegations were made;
names and identifying information of third parties; and social
security numbers of individuals identified in the
investigation.[15]  (Def.'s Response to Pl.'s Mot. to Compel
Production of a Vaughn Index ("Def.'s Response to Pl.'s Mot. to
Compel"), Decl. of Davin Blackborrow ("Blackborow Decl.")
¶ 10.)  The Secretary relies on the declaration of Davin
Blackborrow to explain the agency's decision to redact the names
and personal information.[16]  (See id.)  In the declaration,
Blackborrow states that a "coded format [was] used . . . to
assist the Court and Plaintiff in reviewing the information
withheld within the context of the documents themselves."  (Id.)
He explains further that "[e]ach instance of information withheld
pursuant to the FOIA on the attached documents is accompanied by
a coded designation that corresponds to the categories" defined
by the agency.  (Id.)

The administrative record, however, falls short of the
detailed process that the agency purports to have taken in

---

[15] The Army also redacted from the record Augustus's social
security number and the Secretary concedes that Augustus is
entitled to this information.  (Def.'s Response to Pl.'s Mot. to
Compel Production of a Vaughn Index ("Def.'s Response to Pl.'s
Mot. to Compel"), Decl. of Davin Blackborrow ("Blackborrow
Decl.") ¶ 10.)

[16] The Secretary states that the Blackborrow declaration
"serves . . . [as] a Vaughn index in this case."  (Def.'s
Response to Pl.'s Mot. to Compel at 2.)

- 17 -

redacting the documents.  The record does not include coded
designations by each redaction that correspond to the agency's
reasons for withholding the information.  In fact, there are few,
if any, numbers placed next to the redacted information that
would help explain the information -- such as the names and
identifying information of individuals against whom allegations
were made -- redacted from any particular document.  It is
unclear from the administrative record that information such as
names and personal information are, indeed, the information
withheld under the claimed exemption.  There is no basis upon
which to conclude that the Army properly withheld the redacted
information in compliance with FOIA exemptions 6 and 7(C).  See,
e.g., Banks v. U.S. Dep't of Justice, 700 F. Supp. 2d 9, 16
(D.D.C. 2010) (finding agency's Vaughn index and record
inadequate where the Vaughn index did not discuss the nature or
type of information withheld and it was unclear from the record
that the information was withheld on the basis the agency
claimed).  Thus, the Secretary's motion for summary judgment will
be denied without prejudice as to this issue, and the defendant
will be directed to file a copy of the redacted ROI reflecting
coded designations that correspond to the agency's Vaughn index.
Augustus's motion as to this issue also will be denied without
prejudice.

     B.   Privacy Act

- 18 -

The Privacy Act provides an individual with access to
government records that pertain to her which are contained in a
system of records and allows the individual to review and have a
copy made of all or any portion of the records.  5 U.S.C.
§ 552a(d).  The Act, however, provides certain exemptions and
exceptions.  See id. § 552a(d)(5).  These include exemptions that
prevent disclosure of information compiled in reasonable
anticipation of a civil action or proceeding and of investigatory
material compiled for law enforcement purposes.[17]  See id.
§ 552a(k)(2).

The threshold issue, however, is whether the Gravett ROI was
maintained in a system of records under the Privacy Act because
"the determination that a system of records exists triggers
virtually all of the other substantive provisions of the Privacy

---

[17] The Secretary raises both of these exemptions as the
basis for providing Augustus with a redacted version of the ROI.
(See Def.'s Suppl. at 6 ("[W]e have determined that these records
were produced in reasonable anticipation of litigation regarding
your complaint." (emphasis in original)); 15 ("Pursuant to the
authority to exempt systems of records under the Privacy Act,
. . . the Army has exempted General Legal Files from the
requirements of the Privacy Act." (citing Army Reg. 340-21, The
Army Privacy Program ¶ 5-5(g)).)  Augustus, meanwhile, contends
that the ROI is not protected by the privilege protecting
information compiled in anticipation of litigation because "[t]he
Defendant never established a nexus or reasonable basis for the
claim of work-product privilege[.]"  (Pl.'s Response to Def.'s
Suppl. at 5.)  She states that the exemption does not apply
because "'civil action or proceedings' is intended to include
court proceedings, preliminary judicial steps, and quasi-judicial
administrative hearings or proceedings" and "Gravett was acting
in the capacity of an investigating officer . . . [who] 'is not
bound by the rules of evidence for trials by courts-martial or
for court proceedings generally.'"  (Id. at 6-7.)

- 19 -

Act, such as an individual's right to receive copies[.]" <u>Henke</u>
<u>v. U.S. Dep't of Commerce</u>, 83 F.3d 1453, 1459 (D.C. Cir. 1996).

"The Privacy Act defines 'system of records' to mean 'a group of
any records under the control of any agency from which
information is retrieved by the name of the individual or by some
identifying number, symbol, or other identifying particular
assigned to the individual.'" <u>Lee v. Geren</u>, 480 F. Supp. 2d 198,
206-07 (D.D.C. 2007) (quoting 5 U.S.C. § 552a(a)(5)).

"'[R]etrieval capability is not sufficient to *create* a system of
records; the agency must in practice retrieve information by
personal identifier.'" <u>Id.</u> at 207 (emphasis in original)
(quoting <u>McCready v. Nicholson</u>, 465 F.3d 1, 17 (D.C. Cir. 2006)).

"Given the statutory language 'is retrieved,' the 'agency's
actual retrieval practice and policies' are what matter[.]'" <u>Id.</u>
(quoting <u>Henke</u>, 83 F.3d at 1460-61).

The Secretary initially withheld the entire ROI on the
ground that it was not maintained in a system of records under
the Privacy Act.  A memorandum issued by Principal Deputy General
Counsel for the Army Avon N. Williams, III (the "Williams
memorandum"), however, stated "that the requested information is
maintained in a [Privacy Act] system of records[,]" namely, the
AR600-20 NGB Equal Opportunity Investigative Files ("AR600-20
NGB").  (Def.'s Suppl. at 6; First A.R., Tab A at 1254.)  The
Secretary was ordered to clarify the inconsistency.  In response,

the Army submitted a supplemental memorandum, including a
declaration of Patricia Smith, the Equal Opportunity and
Diversity Officer for the Army National Guard.  Smith stated that
the Williams memorandum was incorrect and that the ROI was not
maintained in AR600-20 NGB or any other Privacy Act system of
records.  (Def.'s Suppl., Ex. 1, Patricia Smith Decl. ("Smith
Decl.") ¶ 4 ("Previous statements that the ROI was maintained in
AR600-20 NGB are incorrect and are the result of an absence of
direct coordination with the NGB EO office during Plaintiff's
[administrative] FOIA appeal.").)  She added that the Army does
not maintain in a system of records incomplete or inaccurate
records.  (Id. ¶ 12 (citing C.F.R. 310.5).)  According to Smith,
because the investigation was not complete and the ROI was not
legally sufficient for procedural and substantive reasons, the
ROI was not maintained in any system of records.  (Id. ¶¶ 11, 12
(citing C.F.R. 310.5).)  Smith cited a letter sent from the NGB
Chief Legal Counsel stating that the ROI did not comply with the
Army's EO complaint processing system because it was not made in
writing and under oath (Def.'s Suppl., Ex. 1, Memorandum Chief,
Nat'l Guard Bureau ¶ 3(d)); that the ROI's findings and
recommendations were not supported by the investigative record
because, among other things, it did not include key information,
such as the complainant's position or personnel files (id.
¶ 4(e)); that a number of witnesses did not review or sign their
statements (id. ¶ 5(e)); and that the ROI was silent on possible

remedies to the problem of preferential treatment for white male officers.  (Id. ¶ 6(d).)

Augustus, meanwhile, asserts that the ROI is maintained in a system of records.  For support, she cites Department of Defense ("DoD") Directive 7050.6, which requires that "[a] copy of the documents acquired during the investigation and summaries of witness testimony shall be transmitted to the member or former member if he or she requests them."  (Pl.'s Am. Response to Def.'s Suppl. at 4 (internal quotation marks omitted).)  However, the cited DoD directive language says nothing about whether the ROI is maintained in a system of records for Privacy Act purposes.  Augustus does nothing else to rebut the Secretary's evidence that the ROI was not maintained in a system of records. She does not demonstrate that Gravett's ROI is a record that can be retrieved by name, social security number or any other personal identifier.  Nor does she demonstrate that any actual repository for the ROI qualifies as a system of records. Because Augustus has failed to support her argument that the ROI was maintained in a system of records, her motion for summary judgment will be denied as to this issue and the Secretary's motion will be granted.

III. DAMAGES UNDER THE PRIVACY ACT

Augustus seeks damages under the Privacy Act, alleging injuries caused when the defendant (1) collected information about her from third parties; (2) failed to publish notice of its

- 22 -

record keeping system; and (3) failed to safeguard her private information.  Under the Privacy Act, "[p]laintiff bears the burden of proving that the agency's action in violating the Privacy Act was intentional or willful." Djenasevic v. Exec. U.S. Attorney's Office, 579 F. Supp. 2d 129, 136 (D.D.C. 2008) (citing Albright v. United States, 732 F.2d 181, 189 (D.C. Cir. 1984) and § 552a(g)(4)).  "This means that the government is not liable for every affirmative or negligent act that technically violates the Privacy Act[.]" Alexander v. FBI, 691 F. Supp. 2d 182, 192 (D.D.C. 2010) (citing Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987)).  "'Instead, the violation must be so "patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful."'" Id. (quoting Laningham, 813 F.2d at 1242 (quoting Wisdom v. HUD, 713 F.2d 422, 425 (8th Cir. 1983))).  "To meet [this] burden, plaintiff 'must prove that the offending agency acted without grounds for believing its actions lawful or that it flagrantly disregarded the rights guaranteed under the Privacy Act." Djenasevic, 579 F. Supp. 2d at 136 (internal quotation marks and alterations omitted).  This standard is high and requires "a showing of 'something greater than gross negligence' on the agency's part." Id. (quoting Tijerina v. Walters, 821 F.2d 789, 799 (D.C. Cir. 1987)).

A.   Privacy Act limitations on collecting information from third parties

- 23 -

Section 552a(e)(2) of the Privacy Act "requires federal agencies that maintain systems of records to 'collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs.'"  Thompson v. Dep't of State, 400 F. Supp. 2d 1, 8 (D.D.C. 2005) (quoting § 552a(e)(2)).  This section "was designed to discourage the collection of personal information from third party sources and therefore to encourage the accuracy of Federal data gathering."  Id. (internal quotation marks omitted).  This "reflects congressional judgment that the best way to ensure accuracy in general is to require the agency to obtain information directly from the individual whenever practicable."  Id. (internal quotation marks omitted).  In determining whether an agency has violated § 552a(e)(2), "courts must weigh the interests of both accuracy and privacy[.]"  Thompson, 400 F. Supp. 2d at 9.

Augustus alleges that the Secretary violated § 552a(e)(2) in several ways.[18]  (See Pl.s' Mem. at 14-16.)  First, she alleges

---

[18] These allegations include that the Army violated § 552a(e)(2) by collecting third party information from at least 19 witnesses in compiling the Gravett ROI.  (See Pl.s' Mem. at 14.)  Augustus, however, is not entitled to damages for this claim because Augustus has failed to rebut the Secretary's evidence showing that the ROI is not maintained in a system of records.  Even if the ROI was maintained in a system of records, Augustus merely alleges that the "[d]efendant's agents made over 20,000 . . . separate references" to her in its ROI, but she does not present facts showing that the agents collected the

- 24 -

that the Army violated the Privacy Act by collecting information

from Colonels Dan Costner and Marylin Muzny who "fraudulently

generated a DA Form 4187 . . . to prevent her from receiving a

new job assignment."[19]   (Pl.'s Mem. at 14.)   The form to which

Augustus refers is a personnel action form completed by Costner,

which states on its face that it is to be "[u]sed by [a] soldier

. . . when requesting a personnel action on his/her own behalf."

(First A.R., Tab A at 302.)   It appears that Augustus, herself,

should have completed the form.   However, the Secretary states --

and Augustus does not dispute -- that "the form may also be used

by a unit to indicate the change in duty status of a soldier or

to request a change in duty status."   (Def.'s Opp'n at 6 (citing

Army Reg. 600-8-6 ¶ 2-4).)   In this case, Costner completed the

form in order to support his request to extend Augustus "in place

for an additional year."   (First A.R., Tab A at 301.)   Moreover,

Augustus fails to demonstrate that the information contained in

---

information from third parties or showing what the nature of the
information gathered was to demonstrate that it was not
impracticable for the Secretary to collect the information from
her directly.   See 5 U.S.C. § 552a(e)(2).

   [19] To the extent that this is a challenge to the Secretary's
decision not to promote Augustus, a Privacy Act allegation
against the military regarding non-promotion "is a nonjusticiable
matter solely within the province of the military."   (Mem. Op. at
30 (citing Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1511 (D.C.
Cir. 1989)).)   "To grant such relief would require us to second-
guess the Secretary's decision about how best to allocate
military personnel in order to serve the security needs of the
Nation."   Kreis, 866 F.2d at 1511.   The Privacy Act, therefore,
provides no relief for Augustus's claim of non-promotion.

the form resulted in an adverse determination about her rights,
benefits and privileges.  Her bare allegation that "she did not
receive a new job assignment as a result of the collection of the
third party information on [her]" (Pl.'s Opp'n at 14), does not
trigger the defendant's obligation to collect information from
her.  See 5 U.S.C. § 552a(e)(2).

Augustus also claims that the Secretary violated the Privacy
Act by providing inaccurate third party information about her to
the NGB Senior Service College ("SSC") Selection Board.[20]
However, Augustus offers no evidentiary support for this claim.
She identifies a number of individual documents in the record --
many of which merely announce the availability of scholarships
and describe the Army's policies for evaluating the applicants
(see, e.g., First A.R., Tab A at 351-54, 371-75) -- but fails to
demonstrate or even allege that these documents were maintained
in any system of records.  Also, Augustus does not point to any

_____

[20] To the extent that this claim alleges that Augustus was
wrongly denied a scholarship, adjudication of this claim would
impinge upon the purview of the military.  "[J]udges are not
given the task of running the Army."  Kries, 866 F.2d at 1511.
"The military constitutes a specialized community governed by a
separate discipline from that of the civilian" and an "[o]rderly
government requires that the judiciary be as scrupulous not to
interfere with legitimate Army matters as the Army must be
scrupulous not to intervene in judicial matters."  Id. (quoting
Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953)).  The question
of which officers should be selected to acquire an SSC
opportunity is left to the Director of the Army National Guard
(see First A.R., Tab A at 351), and to review the Director's
decision would be to second-guess the Director's decision.  Thus,
the Privacy Act provides no relief for a claim regarding non-
selection for an SSC scholarship.

- 26 -

specific information about her in the record that was provided to the SSC Selection Board.  (See Pl.'s Opp'n at 15-16.)

Finally, Augustus claims, without support, that the Army violated the Privacy Act when Byrd interviewed her "regarding allegations of improper promotions among officers" (Pl.'s Opp'n at 17) without providing her with a Privacy Act Statement.  The Secretary responds that Augustus does not identify what Privacy Act right is violated.  (Def.'s Mem. at 18.)  Army Regulation 340-21 requires that a Privacy Act statement be provided to an individual whenever "personal information is requested from an individual that will become part of a system of records retrieved by reference to the individual's name or other personal identifier[.]"  Army Reg. 340-21 ¶ 4-2.  Aside from her bare allegations that the Army violated the Privacy Act by collecting information from her in its investigation of improper promotions, Augustus provides no evidence reflecting that the interviews and corresponding documents compiled during the investigation constitute or are maintained in a system of records for the purpose of the Privacy Act or otherwise demonstrating that a Privacy Act statement was necessary under these circumstances. "It is insufficient to respond to a motion for summary judgment with argument and no facts[,]" McCready v. Principi, 297 F. Supp. 2d 178, 193-94 (D.D.C. 2003) (reversed in part on other grounds) (citing Anderson, 477 U.S. at 248), and there are no genuinely disputed material facts that must be resolved by a trial.  The

- 27 -

Secretary's motion will be granted as to this issue and
Augustus's motion will be denied.

B.   <u>Failure to publish a record-keeping system</u>

Under § 552a(e)(4), "[e]ach agency that maintains a system
of records [must] . . . publish in the Federal Register upon
establishment or revision a notice of the existence and character
of the system of records[.]"  5 U.S.C. § 552a(e)(4).  Augustus
states that "all instances of disclosure of unlawfully collected
and maintained information [about her] . . . constitute[] a
failure to publish a record keeping system" and that Gravett's
ROI and the "NGB-IG and the DoD-IG database" are "systems of
records where unlawful information was collected and maintained
from or about [her] in more than one hundred and fifty [thousand]
separate violations of [her] Privacy Act rights."  (Pl.'s Mem. at
19.)  The Secretary argues that "plaintiff's bare allegation
fails to allege any specific facts demonstrating a violation of
the Privacy Act" and that Augustus "does not identify the records
for which the Army purportedly failed to publish a record keeping
system."  (Def.'s Mem. at 19.)  The Secretary has demonstrated
that the Gravett ROI was not maintained in a system of records,
and Augustus has not put forward any evidence or facts to support
her contention that the NGB-IG and DoD-IG databases are systems
of records for the purpose of the Privacy Act.  Augustus
therefore has not demonstrated any genuine dispute over whether
the Army maintained the ROI in a system of records.  Summary

- 28 -

judgment will be granted for the Secretary on Augustus's

§ 552a(e)(4) claim.

C.   Failure to safeguard Augustus's private information

Under § 552a(e)(10) of the Privacy Act, federal agencies are

required to maintain systems of records to

> establish appropriate administrative, technical and
> physical safeguards to insure the security and
> confidentiality of records and to protect against any
> anticipated threats or hazards to their security or
> integrity which could result in substantial harm,
> embarrassment, inconvenience, or unfairness to any
> individual on whom information is maintained.

§ 552a(e)(10).  Thus, "[a]gencies subject to the Privacy Act must

establish 'appropriate administrative, technical, and physical

safeguards' to ensure the security and confidentiality of the

'private information under their charge.'"  Alexander v. FBI, 691

F. Supp. 2d 182, 191-92 (D.D.C. 2010) (quoting 5 U.S.C.

§ 552a(e)(10)).

Augustus claims that the Secretary's agents violated her

Privacy Act rights "when they unlawfully collected information

. . . , maintained the unlawful information in a system of

record[s], and disclosed the information that described how [she]

exercise[d] her First Amendment rights."  (Pl.'s Mem. at 19-20.)

Plaintiff further claims that the "record . . . contains and

demonstrates more than one hundred and fifty thousand instances

of the Defendant's failure to safeguard private information

[about her] that the Defendant unlawfully maintained in a system

of record[s] and disclosed to third parties."  (Id. at 20.)  The

- 29 -

Secretary contends that Augustus has not established that the disclosures constitute records subject to Privacy Act protections.  (Def.'s Mem. at 19.)  Augustus again fails to provide facts to support her argument that the personal information was maintained in a system of records and points to no specific places in the record to support her claim of unlawful disclosure.  Because reciting bare allegations is not enough to survive a motion for summary judgment, Anderson, 477 U.S. at 249, the Secretary's motion will be granted as to this issue and Augustus's motion will be denied.

<u>CONCLUSION AND ORDER</u>

There are no material factual disputes regarding Augustus's APA claim, and judgment will be entered in her favor and against the Secretary on that claim.  Because Augustus has not presented facts reflecting a genuine dispute regarding Augustus's Privacy Act claim, the Army has carried its burden of demonstrating that it is entitled to summary judgment and judgment will be entered in favor of the Secretary and against Augustus as to that claim. However, with respect to Augustus's FOIA claim for an unredacted copy of the ROI, both parties' motions will be denied without prejudice and the Secretary will be directed to submit a copy of the ROI that reflects the coding system identified in his Vaughn index.  Accordingly, it is hereby

ORDERED that the Secretary's motion [#60] for summary judgment is GRANTED IN PART and DENIED IN PART.  Judgment is

- 30 -

entered for the Secretary as to Augustus's Privacy Act claim.
The motion is denied as to Augustus's APA claim and denied
without prejudice as to Augustus's FOIA claim for an unredacted
copy of Gravett's ROI.  It is further

ORDERED that the Secretary file within 30 days of the entry
of this Memorandum Opinion and Order a redacted copy of Gravett's
ROI reflecting the coding system identified in the Secretary's
Vaughn index.  It is further

ORDERED that Augustus's motion [#93] for summary judgment is
GRANTED IN PART and DENIED IN PART.  Judgment is entered for
Augustus on her APA claim.  The motion is DENIED as to her
Privacy Act claim.  Augustus's motion as to her FOIA claim for an
unredacted copy of Gravett's ROI is denied without prejudice to
refiling it after the Secretary has complied with this Order.

SIGNED this 22nd day of November, 2011.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge